## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**VENITRA DUKES a.k.a.**
**VENITRA GAINEY,**

      **Plaintiff,**

                                   **CASE NO. 6:21-cv-1342-GAP-GJK**

    v.

**LVNV FUNDING, LLC,**

      **Defendant.**

_____/

## DEFENDANT LVNV FUNDING, LLC'S MOTION FOR ATTORNEY'S FEES AND COSTS

      Pursuant to 15 U.S.C. § 1692k, 28 U.S.C. § 1927, and the Court's inherent authority to sanction improper conduct, Defendant LVNV Funding, LLC ("LVNV") respectfully moves the Court to award LVNV its attorney's fees and costs for defending this lawsuit, as follows:

      1.     Under 15 U.S.C. § 1692k, a court may order a *plaintiff* to pay the defendant's attorney's fees and costs for bringing a claim under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, "in bad faith and for the purposes of harassment."

      2.     Under 28 U.S.C. § 1927, the court may order an *attorney* to pay its opponent's fees and costs if the attorney "multiplies the proceedings in [the] case unreasonably and vexatiously."

1

3.      Under the Court's inherent authority to sanction improper conduct, the Court may order a *plaintiff and/or her attorneys* to pay the defendant's attorney's fees and costs "for actions taken in bad faith, vexatiously, wantonly, or for oppressive reasons."

4.      For the reasons more fully set forth in the incorporated Memorandum of Law, the Court should order Plaintiff and/or her attorneys to pay LVNV's attorney's fees and costs, which to date total $35,899.50 in fees and $2,356.69 in costs, because the evidence proves that this case was brought in bad faith and for the purpose of harassment and that Plaintiff and her attorneys unreasonably and vexatiously multiplied the proceedings.

<u>**MEMORANDUM OF LAW**</u>

## I.      <u>INTRODUCTION</u>

In this lawsuit, Plaintiff claimed that LVNV violated the FDCPA by "falsely" reporting a debt as disputed, even though she allegedly "no longer disputes" the debt. This allegation was patently false. At her deposition, Plaintiff testified that she has disputed the debt for years and still disputes it to this day. She further testified that her sole reason for claiming she "no longer disputes" the debt is that she and her attorneys, Credit Repair Lawyers of America ("CRLA"), believed it would enable her to obtain additional lines of credit. Following her deposition, Plaintiff doubled

down on her false statements to the Court, filing a sham declaration that stated she "no longer disputes" the debt.

The Court saw through this charade and granted summary judgment in LVNV's favor, concluding that LVNV "cannot possibly have falsely represented [Plaintiff's] debt as disputed" because "Plaintiff admittedly continues to dispute the debt owed." Dkt. 34 at p. 12-13. In turn, the Court issued Plaintiff and CRLA a stern rebuke: "Plaintiff does not have the right to manipulate her credit reports with false representations to improve her access to credit, and she may not weaponize the FDCPA against a debt collector for declining to participate in a scam." *Id.* at p. 13.

Sanctions are justified because Plaintiff (through CRLA) falsely and repeatedly represented to the Court that she "no longer disputes" the debt when, in fact, she has disputed the debt all along. And she did so for the improper purpose of having the Court force LVNV to "manipulate her credit reports with false representations" (and perhaps making a little money in the process). As a result of Plaintiff's and CRLA's conduct, LVNV was forced to incur substantial attorney's fees and costs defending a suit that was predicated on a lie and that should never have been filed in the first place. Thus, the Court should require that Plaintiff and/or CRLA pay LVNV's attorney's fees and costs in defending this lawsuit.

## II.   **FACTUAL AND PROCEDURAL BACKGROUND**

Years before filing this lawsuit, Plaintiff Venitra Dukes opened a Credit One Bank credit card account. *See* LVNV's Statement of Uncontested Material Facts ("SMF"), ¶ 1. After initially making some payments, Plaintiff failed to pay the total balance due. *Id*. at ¶ 2. Thereafter, LVNV acquired the account and engaged its master servicer, Resurgent Capital Services, L.P. ("RCS"), to recover the outstanding balance. *Id*. at ¶¶ 27, 33. As part of its servicing of the account, RCS reported the account to the national credit reporting agencies. *Id*. at ¶¶ 35-36.

In 2019, Plaintiff disputed the debt, claiming that she had never opened an account with Credit One bank and did not owe the stated balance to LVNV. *Id*. at ¶¶ 21, 26-27. In accordance with the FDCPA, after receiving Plaintiff's dispute and from that point forward, each time RCS furnished information to the credit reporting agencies about Plaintiff's account, it included the notation that Plaintiff disputed the account. *Id*. at ¶¶ 35-36.

Thereafter, Plaintiff retained the services of her attorneys in this case, CRLA. In May 2021, with Plaintiff's authorization and approval, CRLA drafted and sent LVNV a letter ("the Letter") regarding the debt. *Id.* at ¶¶ 13, 29-30, 34; Dkt. No. 1, Exh. A. The Letter, written in broken English, stated that Plaintiff "has reviewed the credit disclosure" and identified inaccurate information "in the credit file." Dkt. No. 1, Exh. A. The Letter then stated:

4

- Our client no longer disputes LVNV Funding LLC, Original Creditor: Credit One Bank, N.A., Balance: $744, Date of Opening: May 2018. Please remove the dispute comment from the account.

*Id.*

RCS, who received the letter on LVNV's behalf, was concerned that the Letter might be a scam for several reasons. For example, it was unclear who the sender was affiliated with and whether the sender was, in fact, authorized to act on Plaintiff's behalf.[1] The Letter also gave no indication of why Plaintiff "no longer disputed" the debt, let alone what data points Plaintiff no longer disputed, e.g., the name of the original or current creditor, the balance, the date the account was opened, etc. And even though Plaintiff supposedly no longer disputed the debt, the Letter was not accompanied by a check or other instrument, nor did it contain a promise to pay the account in the future or any indication of whether or how Plaintiff intended to resolve the account moving forward. SMF, ¶ 42.[2]

---

[1] The envelope stated it was from Michigan Consumer Credit Lawyers, while the letterhead stated it was from CRLA. SMF, ¶ 37; Dkt. No. 1, Exh. A. The Letter bore the typewritten signature of Gary Hansz, and identified him as affiliated both with CRLA, but also with Gary Hansz Attorney at Law. Dkt. No. 1, Exh. A. Plaintiff was not copied on the Letter, and the Letter did not include a power of attorney or any other documentation evincing the sender's authority. *Id.*

[2] Nor were these the only qualities that raised LVNV's suspicions about the Letter and its purpose: at the same time LVNV received the Letter regarding Plaintiff's account, it also received a host of identical letters, all sent from CRLA and all bearing Gary Hansz's typewritten signature, purportedly sent on behalf of consumers all over the country. SMF, ¶¶ 41, 43. The mass mailing of letters raised the specter of a scam.

After considering the Letter, the circumstances surrounding the Letter, and Plaintiff's prior disputes as a whole, RCS could not confirm Plaintiff no longer disputed the account she had previously claimed she never opened in the first place. Erring on the side of caution, and mindful of 15 U.S.C. § 1692e(8)'s strict requirement that disputed accounts be reported as such, RCS kept the dispute notation in place. *Id.*, ¶¶ 43-44.

On August 17, 2021—roughly two (2) months after RCS received the Letter—Plaintiff filed this lawsuit.[3] In the Complaint, Plaintiff alleged that she "no longer disputes" the debt and that LVNV had violated two separate FDCPA provisions by reporting it as disputed. *See* Dkt. No. 1 at ¶¶ 8, 22. The first, 15 U.S.C. § 1692e(2), prohibits a company from misrepresenting the "character, amount, or legal status" of a debt. The second, 15 U.S.C. § 1692e(8), prohibits "[c]ommunicating or threatening to communicate to any person credit information

---

[3] This lawsuit is one of at least three (3) lawsuits brought by Plaintiff, through CRLA, against her creditors and asserting the same theory of liability, *i.e.*, that Plaintiff disputed the particular debt, reversed course and claimed she no longer disputed it, and sued the creditor when it subsequently reported the debt as disputed. *See* SMF at ¶¶ 31-32. And it is one of at least two matters in which the plaintiff, like Plaintiff here, admitted that she still disputes the debt and that she only claimed not to dispute it to try and bolster her credit. *See Jacqueline Valdes v. LVNV Funding*, M.D. Fla., 6:21-cv-01438-FBD-EJK, Dkt. No. 29-1 at ¶¶ 21-22. And the cases filed in this Court are just a drop in the bucket: CRLA has filed approximately 100 other virtually identical lawsuits on behalf of scores of individuals across the country, raising the specter that CRLA is engaged in an orchestrated scheme to manipulate their clients' credit reports through the courts.

which is known or which should be known to be false, *including the failure to communicate that a disputed debt is disputed*." (emphasis added).

At her deposition, Plaintiff told a different story altogether. She candidly testified that she has disputed the debt for years and still disputes it on the grounds she does not believe she owes the amount being reported. SMF at ¶¶ 3-4, 21. As for *why* Plaintiff claimed she no longer disputed the debt, she testified that she and CRLA believed she would be able to obtain additional lines of credit if LVNV removed the dispute notation. *Id.* at ¶¶ 16, 19-20, 30. Plaintiff also testified that her "purpose" in filing this lawsuit was to have the Court force LVNV to remove the dispute notation, even though she admits she still disputes it. *Id.* at ¶ 47.

At the close of discovery, Plaintiff and LVNV filed cross-motions for summary judgment. *See* Dkt. Nos. 23 & 24. Plaintiff attached to her motion a declaration, signed under penalty of perjury, in which she again falsely represented to the Court that she "no longer dispute[s]" the debt. *See* Dkt. No. 24-2.

On October 27, 2022, the Court granted summary judgment in favor of LVNV and against Plaintiff. *See* Dkt. No. 34. The Court rightly concluded that LVNV had not made any "false" representations by reporting the account as disputed because "Plaintiff has admitted in sworn testimony that she continues to dispute the debt in question." Dkt. No. 34 at p. 12. As for Plaintiff's declaration, the Court concluded it was a sham declaration, entitled to no weight, because Plaintiff's "conclusory

statement[]" that she "no longer dispute[s]" the debt was flatly contradicted by Plaintiff's "unequivocal" testimony. *Id.* at p. 8. And in closing, the Court deftly summed up this case as follows: "Plaintiff does not have the right to manipulate her credit reports with false representations to improve her access to credit, and she may not weaponize the FDCPA against a debt collector for declining to participate in a scam." *Id.* at p. 13.

## III.   <u>LAW AND ARGUMENT</u>

For the reasons explained below, the Court should require that Plaintiff and/or CRLA pay LVNV's attorney's fees and costs incurred in defending this suit under three separate authorities: 15 U.S.C. § 1692k, 28 U.S.C. § 1927, and the Court's inherent authority to sanction improper conduct. Under each such authority, whether to award attorney's fees and costs is left to the sound discretion of the Court. *Benjumea v. Sys. & Servs. Techs.*, 2020 U.S. Dist. Lexis 241098, *2 (discussing 15 U.S.C. § 1692k); *Kennedy v. Solano*, 2018 U.S. Dist. LEXIS 201374, *7 (M.D. Fla. Nov. 9, 2018 (discussing 28 U.S.C. § 1927); *In re Engle Cases*, 283 F. Supp. 3d 1174, 1251 (M.D. Fla. Oct. 18, 2017) (discussing the Court's inherent authority).

A. *Pursuant to 15 U.S.C. § 1692k, Plaintiff should be required to pay LVNV's attorney's fees and costs because she knowingly made false statements to the Court to force LVNV into reporting false information.*

The FDCPA was passed to "eliminate abusive debt collection practices by debt collectors [and] to insure that those debt collectors who refrain from using

abusive debt collection practices are not competitively disadvantaged." 15 U.S.C. §
1692. Under the FDCPA, a prevailing plaintiff is entitled to actual damages, up to
$1,000 in statutory damages (even in the absence of actual damages), and shifting
attorney's fees and costs. 15 U.S.C. § 1692k. Recognizing that these extraordinary
incentives could themselves lead to abuse, Congress wrote a countermeasure into
the statute. "On a finding by the court that an action under this section was brought
in bad faith and for the purpose of harassment, the court may award to the defendant
attorney's fees reasonable in relation to the work expended and costs." 15 U.S.C. §
1692k.

"Typically, bad faith *and* harassment are found when 'plaintiff's knowledge
that a claim was meritless [is] proven by plaintiff's own contradictory testimony or
other evidence.'" *Id.* (citing *Gillis v. Deutsche Bank Tr. Co. Americas*, 2016 U.S.
Dist. LEXIS 16966, 2016 WL 551765, *3 (M.D. Fla. Jan. 26, 2016), *report and
recommendation adopted*, 2016 U.S. Dist. LEXIS 16967, 2016 WL 540300 (M.D.
Fla. Feb. 11, 2016) (emphasis added). *See, e.g.*, *Tucker v. CBE Grp., Inc.*, 710 F.
Supp. 2d 1301 (M.D. Fla. 2010) (finding the plaintiff acted in bad faith and for the
purpose of harassment and awarding attorney's fees and costs where the plaintiff's
deposition testimony contradicted factual allegations underlying the plaintiff's claim
and where the plaintiff's attorneys had filed boilerplate complaints, which the

plaintiff verified even though the complaints contained false factual allegations); *Rhinehart v. CBE Grp., Inc.* 714 F. Supp. 2d 1183, 1185-86 (M.D. Fla. 2010) (same); *Cunningham v. Credit Mgmt., L.P.*, 2010 U.S. Dist. LEXIS 102802, *15-16 (N.D. Tex. August 30, 2010) (concluding the plaintiff brought suit in bad faith and for the purpose of harassment and awarding defendant attorney's fees and costs where the plaintiff "provided no factual basis for his claims that Defendants misrepresented the debt owed").

Here, Plaintiff's claims were based on an unabashed falsehood. Plaintiff alleged in the Complaint that "she no longer disputes" the debt. *See* Dkt. No. 1 at ¶ 8. In her deposition, Plaintiff admitted this allegation is false. She testified that she has disputed the debt all along (on the grounds she does not believe she owes the amount being reported). SMF at ¶¶ 3-4, 21. To make matters worse, Plaintiff persisted in this falsehood until the bitter end. After her deposition, Plaintiff executed and filed a sham declaration stating that she no longer disputes the debt, when, in fact, she *does* still dispute it. *See* Dkt. No. 24-2. And whether Plaintiff disputes the debt is not some tangential, immaterial issue. As noted by the Court, it is "the central question of this case." *See* Dkt. 34 at p. 8.

While the above alone is enough to satisfy the "bad faith" and "for the purpose of harassment" elements, Plaintiff offered additional reasons for concluding that she filed suit for the purpose of harassment. In particular, Plaintiff testified that her goal

in filing this suit was to force LVNV to report the debt as *un*disputed, even though she admits she still disputes it. *Id.* at ¶ 47. Plaintiff further testified that the only reason she wanted LVNV to remove the dispute notation is that she believed it would enable her to obtain additional lines of credit, *not* because she *actually* no longer disputed the debt. *Id.* at ¶¶ 16, 19-20, 30. Simply put, Plaintiff was trying to force LVNV into participating in an orchestrated scam, and into furnishing false information to the credit bureaus in order to improve her access to credit.

For the foregoing reasons, the Court should conclude that Plaintiff filed this suit in bad faith and for the purposes of harassment and order Plaintiff to pay LVNV's attorney's fees and costs.

B. *Pursuant to 28 U.S.C. § 1927, CRLA should be required to pay LVNV's attorney's fees and costs because they knowingly misrepresented that Plaintiff disputed the debt and forced LVNV to defend the frivolous claims.*

Under 28 U.S.C. § 1927, the Court may order an attorney to pay its opponents attorney's fees and costs if: (1) the attorney engages in "unreasonable and vexatious" conduct; and (2) such conduct "multiplies the proceedings," *i.e.*, the proceedings would not have been conducted absent the complained-of conduct. *Hudson v. Int'l Computer Negotiations, Inc.*, 499 F.3d 1252, 1262 (11th Cir. 2007) (construing 28 U.S.C. § 1927). The purpose of § 1927 is "to deter frivolous litigation and abusive practices by attorneys and to ensure that those who create unnecessary costs bear them." *Footman v. Cheung*, 341 F. Supp. 2d 1218, 1223 (M.D. Fla. 2004).

To qualify as "unreasonable and vexatious," the attorney's conduct must be "tantamount to bad faith;" that is, the attorney must "knowingly or recklessly pursue a frivolous claim." *Id*. Whether the attorney has engaged in such conduct is adjudged using an "objective standard," namely, "how a reasonable attorney would have acted under the circumstances." *Norelus v. Denny's, Inc.,* 628 F.3d 1270, 1282 (11th Cir. 2010). Thus, "objectively reckless conduct" is sufficient to justify sanctions "even if the attorney does not act knowingly and malevolently." *Id*.

"In determining whether an attorney acted in bad faith, a court may rely on the totality of the circumstances." *In re Engle Cases* 283 F. Supp. 3d 1174, 1225 (11th Cir. 2017) (citing *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 278 F.3d 175, 189-90 (3d Cir. 2002). In other words, "[e]ven if discrete instances of an attorney's conduct would not have been sanctionable, a court may nevertheless find bad faith based on the attorney's conduct 'considered as a whole.'" *Id.*

The evidence proves that CRLA acted in bad faith over the course of this lawsuit. CRLA drafted and filed the Complaint, which alleged that Plaintiff "no longer disputes" the debt and that LVNV violated the FDCPA by "falsely" reporting the debt as disputed. Dkt. No. 1 at ¶¶ 8, 22. Thus, the central factual question in this case was whether Plaintiff disputes the debt; if she *does*, then LVNV necessarily reported no false information, and Plaintiff's FDCPA claims were frivolous. *See*

12

Dkt. 34 at p. 12-13 ("Where Plaintiff admittedly continues to dispute the debt owed, Defendant cannot possibly have falsely represented her debt as disputed.").

The evidence proves that Plaintiff has disputed the debt all along, meaning this lawsuit was doomed from the moment it was filed. SMF at ¶¶ 3-4, 21. The evidence also suggests that CRLA was aware she still disputed the debt long before this lawsuit was filed. In particular, Plaintiff testified that CRLA prepared the Letter to LVNV stating she no longer disputed the debt (she simply authorized CRLA to send the letter) and that CRLA was aware that her sole purpose for making this claim was because she and CRLA believed it would bolster her credit score. SMF at ¶¶ 29-30. Even if CRLA did not *know* that Plaintiff still disputed the debt, its conduct was at the very least reckless, and egregiously so. A reasonable attorney would not allege in a Complaint that its client disputes a debt without ensuring that was the case. *Smith v. Grand Bank & Trust*, 193 Fed. Appx. 833, 837 (11th Cir. 2006) (concluding that an attorney's failure to investigate the critical facts of its case is egregiously reckless and justifies sanctions under 28 U.S.C. § 1927). Yet the evidence suggests that is exactly what CRLA did.

Even if CRLA was not aware that Plaintiff disputed the debt when it filed suit, that became inescapably clear at Plaintiff's deposition. Again, Plaintiff testified that she does not believe she owes LVNV the amount being reported and that she disputes the debt. SMF at ¶¶ 3-4, 21. At that point, any reasonable attorney would

have withdrawn the claims. *Avirgan v. Hull*, 932 F.2d 1572, 1582 (11th Cir. 1991) ("When it becomes apparent that discoverable evidence will not bear out the claim, the litigant and his attorney have a duty to discontinue their quest."); *Am. Honda Motor Co. v. Motorcycle Info. Network, Inc.*, 2008 U.S. Dist. LEXIS 26438, 2008 WL 906739, *13 (M.D. Fla. Apr. 2, 2008) ("The bottom line is that [counsel] unreasonably and vexatiously delayed the inevitable defeat of these counterclaims far too long. Indeed, once the documents from American Honda were received, a reasonable attorney would have investigated the claims, convinced their clients to abandon the claims and would have withdrawn the claims promptly."). Instead, CRLA doubled down, filing a sham declaration from Plaintiff that falsely claimed she "no longer disputes" the debt. *See* Dkt. No. 24-2.

Further, CRLA's conduct necessarily multiplied the proceedings. Simply put, this case should never have been filed in the first place. As noted by the Court, because Plaintiff disputes the debt, her claims were dead on arrival. Dkt. 34 at p. 12-13 ("Where Plaintiff admittedly continues to dispute the debt owed, Defendant cannot possibly have falsely represented her debt as disputed."). Thus, *all* of the proceedings in this case were caused by CRLA's conduct, and CRLA should be ordered to pay *all* of LVNV's attorney's fees and costs in defending the case. At the very least, CRLA's post-deposition conduct multiplied the proceedings. After Plaintiff testified that she still disputes the debt, CRLA should have withdrawn the

14

claims. Instead, CRLA filed for summary judgment, relying on a sham declaration and arguing she disputes the debt. This required LVNV to expend additional resources opposing Plaintiff's summary judgment motion and filing a summary judgment motion of its own.

For these reasons, the Court should conclude that CRLA acted "unreasonably and vexatiously" and "multiplied the proceedings" and order CRLA to pay LVNV's fees and costs for defending this lawsuit pursuant to 28 U.S.C. § 1927.

C. *Pursuant to the Court's inherent authority to sanction, Plaintiff and/or CRLA should be required to pay LVNV's attorney's fees and costs because they filed and pursued this lawsuit, which was based on a patent falsehood.*

Federal district courts have the inherent power to police those appearing before them. *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1224 (11th Cir. 2017) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991)). *See also In re Sunshine Jr. Stores, Inc.*, 456 F.3d 1291, 1304 (11th Cir. 2006) ("Federal courts have the inherent power to impose sanctions on parties, lawyers, or both."). This power is "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id.* (quoting *Chambers*, 501 U.S. at 43). The dual purposes underlying this power are "vindicate[ing] judicial authority" and "mak[ing] the prevailing party whole." *Id.* (quoting *Chambers*, 501 U.S. at 46).

Sanctions are called for where the court concludes that a party and/or its attorneys have acted in bad faith. *Purchasing Power*, 851 F.3d at 1224. While direct evidence of subjective bad faith is *sufficient* to impose sanctions, it is *not necessary*. *Id.* Instead, a court may conclude a party or an attorney acted in bad faith where the its conduct is so egregious that it is tantamount to bad faith. *Id.* Such a finding is warranted where a party or an attorney "knowingly or recklessly raises a frivolous argument." *Meunier Carlin & Curfman, LLC v. Scidera, Inc.*, 813 Fed. Appx. 368, 375 (11th Cir. 2020) (citing *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998)). This includes arguments that are premised on a factual allegation that the party or the attorney knows is untrue. *See, e.g.*, *Taverna Imps., Inc. v. A&M Wine & Spirits, Inc.*, 2018 U.S. Dist. LEXIS 241308, *16 (S.D. Fla. Dec. 20, 2018) (finding bad faith and awarding attorney's fees and costs where the plaintiff falsely alleged to have "continuously used" a trademark and rejecting the plaintiff's claims that what qualifies as "continuous" is a question of "semantics"). What sanction to impose, including an award of attorney's fees and costs, is left to the sound discretion of the court. *Chambers*, 501 U.S. at 45-46.

For the reasons explained above, Plaintiff and CRLA engaged in bad faith in this lawsuit. Plaintiff (through CRLA) filed a lawsuit alleging that she "no longer disputes" the debt, even though she admits she still disputes it. CRLA was aware of this fact or was, at the very least, reckless in investigating the basis for the suit. Even

after Plaintiff admitted in her deposition that she still disputes the debt, she and CRLA doubled down and filed a sham declaration falsely stating she no longer disputes the debt. *See Taverna Imps.*, 2018 U.S. Dist. LEXIS 241308, *16 (awarding attorney's fees and costs and noting that a false statement in an affidavit is "extremely troubling"). And Plaintiff and CRLA claimed that she no longer disputed the debt, *not* because it was *true*, but to manipulate her credit rating and obtain lines of credit that would otherwise have been unavailable. Thus, even if the Court declines to award LVNV its attorney's fees and costs pursuant to 15 U.S.C. § 1692k and/or 28 U.S.C. § 1927, the Court should award such fees pursuant to its inherent authority to sanction improper conduct.

## V.   **CONCLUSION**

For the foregoing reasons, Defendant LVNV Funding, LLC respectfully requests that this Honorable Court order Plaintiff and/or Credit Repair Lawyers of America to pay LVNV's attorney's fees and costs in defending this suit.

### **CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 3.01(g)**

I certify that that on November 1, 2022, John M. Marees II, Esquire conferred telephonically with counsel for Plaintiff regarding the relief sought in this motion. The parties did not reach an agreement on the relief requested.

Respectfully submitted,

**MESSER STRICKLER BURNETTE, LTD.**

By:   */s/ Lauren M. Burnette*
LAUREN M. BURNETTE, ESQUIRE
FL Bar No. 0120079
JOHN M. MAREES II, ESQUIRE
FL Bar No. 069879
MAUREEN WALSH, ESQUIRE
FL Bar No. 28179
12276 San Jose Blvd.
Suite 718
Jacksonville, FL 32223
(904) 527-1172
(904) 683-7353 (fax)
lburnette@messerstrickler.com
jmarees@messerstrickler.com
mwalsh@messerstrickler.com
*Counsel for Defendant*

Dated: November 9, 2022

## <u>CERTIFICATE OF SERVICE</u>

I certify that on November 9, 2022, a true copy of the foregoing document was served on all counsel of record by electronic service.

**MESSER STRICKLER BURNETTE, LTD.**

By:    */s/ Lauren M. Burnette*
LAUREN M. BURNETTE, ESQUIRE
FL Bar No. 0120079
JOHN M. MAREES II, ESQUIRE
FL Bar No. 069879
MAUREEN WALSH, ESQUIRE
FL Bar No. 28179
12276 San Jose Blvd.
Suite 718
Jacksonville, FL 32223
(904) 527-1172
(904) 683-7353 (fax)
lburnette@messerstrickler.com
jmarees@messerstrickler.com
mwalsh@messerstrickler.com
*Counsel for Defendant*

Dated: November 9, 2022